IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID J. POPKO, | : | No. 1:13-cv-01845 |
|    Plaintiff, | : | |
| | : | |
| | : | (Judge Kane) |
|    v. | : | |
| | : | |
| PENN STATE MILTON S. | : | |
| HERSHEY MEDICAL CENTER, et al., | : | |
|    Defendants | : | |

## MEMORANDUM

Before the Court is Defendants' motion to dismiss Plaintiff David J. Popko's complaint. (Doc. No. 13.) For the reasons that follow, the Court will grant the motion in part, and deny it in part.

**I.      BACKGROUND**

From March 11, 2011 through May 22, 2011, following an "emotional breakdown," Plaintiff David J. Popko was granted leave from work at Defendant Penn State Hershey Medical Center, under the Family and Medical Leave Act, 29 U.S.C.A. § 2601, et seq. ("FMLA"). (Doc. No. 1 ¶¶ 32-34.) Plaintiff returned to work on May 23, 2011. (Id. ¶ 34.) On June 7, 2011, after Plaintiff witnessed "horseplay" between two other employees, he asked one of the employees to cease the behavior and reported the actions to the other employee's supervisor. (Id. ¶¶ 33-41.)

While assisting other employees with moving tables on November 16, 2011, Plaintiff commented that "my daughter's bra might make a good bumper" regarding the sharp edges of the tables. (Doc. No. 1 ¶¶ 52-60.) On December 9, 2011, Plaintiff was questioned by Defendants Mary Ann Kreiser and Greg Wantland regarding his comment and, on that same day, filed an FMLA request for leave. (Id. ¶¶ 63, 71.) Relevantly, the Penn State Hershey Medical

1

Center sexual harassment policy reads, in part:

> "The Penn State Hershey Medical Center Human Resources Office and Office of Diversity, Inclusion, and Employment Equity will make every effort to promptly investigate and resolve complaints of sexual harassment, with due regard for fairness and the rights of both the complainant and alleged offender, and to conduct all proceedings in the most confidential manner possible. If unsuccessful at resolving the issue informally, the Human Resources Office or Office of Diversify, Inclusion, and Employment Equity may investigate to gather information necessary to reach a formal determination on the merits of the allegations. Investigations will include notifying the alleged offender of the complaint and providing an opportunity to respond to the allegations."

(Id. ¶ 64.) Further, the policy states that "Penn State Medical Center prohibits retaliation against anyone who files a complaint . . .involving alleged sexual harassment." (Id. ¶¶ 64-66.) On December 15, 2011 Defendant Wantland terminated Plaintiff, leaving him the option to resign. (Id. ¶ 73.) Plaintiff alleges that when he asked Defendant Wantland about the pending FMLA request, he was informed that the request was null and void due to the termination. (Id. ¶ 74.) On December 28, 2011 Plaintiff was informed that his FMLA request was denied due to "documentation for leave not received." (Id. ¶¶ 82-84.)

Plaintiff filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on October 10, 2012 pursuant to 42 U.S.C.A. § 2000e-5(b) and(e).[1] (Doc. No 1 ¶ 18.) On or around April 4, 2013, the EEOC issued Plaintiff a Notice of Right to Sue. (Doc. No 1 ¶ 20.) On July 5, 2013, Plaintiff filed a complaint against Defendants Penn State Hershey Medical Center, Greg Wantland, and Mary Ann Kreiser, alleging that Defendants discriminated against him due to both his disability in violation of the

---

[1] 42 U.S.C.A. § 2000e-5(b) and(e) allow a plaintiff to file a Charge of Discrimination within 300 days of the alleged incident in order to retain a right to sue if the claim is concurrently filed with a state agency.

Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and his age in violation of the Age Discrimination in Employment Act, 29 U.S.C.A. § 621, et seq. ("ADEA"). (Doc. No. 1 ¶¶ 86-112.) Plaintiff further alleges that Defendants violated the FMLA by interfering with his right to take leave and by retaliating against him for filing to take leave, discriminated against him for his age and disability in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), and breached the contract contained within the Penn State Hershey Medical Center Human Resources Manual by failing to inform him of his Appeal Rights at the time of his termination. (Doc. No. 1 ¶¶ 113-143.)

On December 9, 2013, Defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted contending that Plaintiff's PHRA, ADA, and ADEA claims were time-barred because they were based on acts occurring more than 300 days before the filing of the Charge of Discrimination with the EEOC. (See Doc. No. 14.) Defendants also contend that Plaintiff fails to sufficiently allege that he was disabled or regarded as disabled, that he suffered discrimination due to his age or disability, or that younger employees were treated more favorably. (See id.) The motion is fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Consistent with the

Supreme Court's ruling in <u>Bell Atlantic Corporation v. Twombly</u>, and <u>Ashcroft v. Ibqal</u>, the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: (1) First, a court should separate the factual and legal elements of a claim, accepting well-leaded factual matter and disregarding any legal conclusions; (2) Second, a court should determine whether the remaining well-pleaded facts sufficiently demonstrate that a plaintiff has a "plausible claim" for relief.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

Although the Rule 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

**III.   DISCUSSION**

    **A.     Continuing violations doctrine**

As an initial matter, Defendants argue that because Plaintiff filed his charge with the EEOC on October 10, 2012, Plaintiff is barred from asserting any acts occurring more than 300 days prior to that date in support of ADA and ADEA claims.  (Doc. No. 14 at 6-7.)   Plaintiff alleges he was terminated on December 15, 2011 exactly 300 days prior to the filing of his EEOC charge.  Thus, Defendants assert that Plaintiff's claims cannot rest on <u>any</u> of the alleged acts in support of his claims with the exception of the act of his termination.

Plaintiff, however, seeks to invoke the continuing violations doctrine, which states that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514 United Bhd. of Carpenters and Joiners of Am., 927 F. 2d 1283, 1295 (3d Cir. 1991). Plaintiff argues that the notification of his formal termination is the "last act" which would allow the invocation of the continuing violations theory. (Doc. No. 17 at 18.) However, the United States Supreme Court has expressly declared that acts such as termination are discrete acts not within the scope of the continuing violations doctrine. See Zankel v. Temple University, 245 F. App'x 196, 199 (3d Cir. 2007) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)). Because the only act Plaintiff alleges in his complaint that falls within the 300 day time limit is the termination, Plaintiff has not alleged facts invoking the continuing violations doctrine. Accordingly, the Court finds that the continuing violations doctrine does not apply to Plaintiff's claims arising under the ADA or ADEA.

### B. Hostile work environment

Although Plaintiff does not specifically allege a hostile work environment claim in the complaint, he refers to the term briefly in Count II of the ADEA Claim and indicates in his brief that he intended to file a hostile working environment claim "based upon age and disability," suggesting he wishes to bring such a claim under both the ADEA and the ADA. (Doc. No. 1 ¶ 104; Doc. No. 17 at 18.) For purposes of the 300 day time-limit, [p]rovided that an act contributing to the [hostile working environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of

determining liability." Morgan, 536 U.S. at 117. However, once again, the only act Plaintiff alleges to occur within the 300 day filing period is the discrete act of Plaintiff's termination, and discrete, individually actionable allegations cannot be aggregated to trigger a continuing violations theory. See O'Connor v. City of Newark, 440 F.3d 125, 131 (3d Cir. 2006) (analyzing Morgan and noting that "there is not a single vote on the Court for the proposition that individually actionable discrete acts may support suit outside the limitations period if they are aggregated and labeled as a hostile environment claim"); Zankel, 245 F. App'x at 199 ("[Plaintiff's termination] is a discrete act, not a continuation of any earlier failures to accommodate that may have occurred [outside the limitations period]."). Because Plaintiff does not allege any facts in support of his hostile working environment claim that occurred within the 300-day time limit, such claims as alleged are time-barred. Plaintiff will be permitted to amend his complaint to adequately allege facts in support of his hostile work environment claim that occurred within the permissible time period.

Moreover, even if such a claim were not time-barred, Plaintiff has not alleged facts that adequately state a hostile work environment claim. A hostile working environment claim allows a plaintiff to allege a pattern of behaviors which amount to a cognizable offense. Morgan, 536 U.S. at 103. The United States Court of Appeals for the Third Circuit has stated that in order to properly plead a hostile work environment claim, "a plaintiff must show that his workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Morgan, 536 U.S. at 116. Moreover, "[t]he discrimination must be 'because of' the employee's protected status or activity." Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir.

2007).

The Court agrees with Defendants that Plaintiff's complaint is deficient of factual averments supporting a hostile environment claim. Plaintiff alleges the legal conclusion that he was "subjected to a hostile working environment from the time he returned from his FMLA leave." (Doc. No. 1 ¶ 36.) However Plaintiff does not allege enough facts tending to show that he was subjected to a sufficiently hostile environment "permeated with discriminatory intimidation." See Morgan, 536 U.S. at 116. Plaintiff relies on Morgan for support, but the allegations in Morgan were more specific and extreme, including racially based slurs and epithets. 536 U.S. at 120. In his complaint, Plaintiff does not allege the type of hostile environment addressed in Morgan; rather, he merely avers that he was excluded from important meetings and not notified of human resources matters. (Doc. No. 1 ¶ 50.) Exclusion from meetings has specifically been found insufficiently severe to sustain a hostile work environment claim. Griffin v. De Lage Landen Fin. Servs., 219 F. App'x 245, 247 (3d Cir. 2007). Because he fails to plausibly allege a sufficiently hostile working environment, or allege that such an environment was based upon his age or disability, the Court will dismiss Plaintiff's hostile work environment claims without prejudice.

  **C.** **Pennsylvania Human Relations Act**

Defendants move to dismiss Plaintiff's claims arising under the Pennsylvania Human Relations Act (PHRA). Under the PHRA, a charge must be filed with the Pennsylvania Human Relations Commission within 180 days of the alleged act. See, e.g., Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). Defendant argues that Plaintiff did not file his charge until October 10, 2012, 300 days after termination, and any claim under the PHRA is therefore

time-barred. Plaintiff contends that the Court should extend the deadline through equitable tolling.

The Third Circuit has advised that there are three principal situations in which equitable tolling may apply: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). Plaintiff asserts that the second situation applies: Plaintiff was unable to timely assert his rights because of his depression, anxiety and disabilities. (Doc. No. 17 at 21.)

The Court finds that Plaintiff has failed to show that he was prevented from timely asserting his rights "in some extraordinary way." See Morgan, 536 U.S. at 113 (noting that equitable tolling is "to be applied sparingly") (emphasis added). Indeed, in seeking equitable tolling, the plaintiff bears the burden of showing that such an extraordinary event has stood in his way, and must also demonstrate that he "diligently pursued his rights." Urcinoli v. Cathel, 546 F.3d 269, 273 (3d Cir. 2008). Plaintiff's bare assertion in his brief that his emotional issues somehow prevented him from timely filing his PHRA charge is plainly insufficient to meet this high burden. See Sistrun v. Time-Warner Cable, No. 02-8023, 2004 WL 1858042, at *8-9 (E.D. Pa. Aug. 19, 2004) (finding that Plaintiff's medical and emotional problems were insufficient to equitably toll the statute of limitations). Accordingly, Plaintiff's claims under the PHRA will be dismissed with prejudice as time-barred.

### D. Americans with Disabilities Act

Defendants move to dismiss Plaintiff's discrimination claim arising under the Americans

with Disabilities Act (ADA). A plaintiff presents a <u>prima facie</u> case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination. <u>Gaul v. Lucent Techs. Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998).

Plaintiff asserts that he was a qualified individual with a disability within the meaning of the ADA due to his depression and anxiety and that his major life activities are affected by that disability. (Doc. No. 1 ¶ 97.) In order to properly state a claim under the ADA, a plaintiff must not merely allege that he has a diagnosed impairment, but also that the physical or mental impairment substantially limits one or more major life activities. <u>Bialko v. Quaker Oats Co.</u>, 434 F. App'x. 139, 142 (3d Cir. 2011) (citing <u>Toyota Motor Mfg. v. Williams</u> 534 U.S. 184, 198 (2002)). An individual is "disabled" when he has (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1)(A–C).

The Court finds, first, that Plaintiff has not alleged he is an individual with a disability. <u>Bialko</u>, 434 F. App'x at 142 (citing <u>Toyota</u> 534 U.S. at 198) ("To be 'disabled' under the ADA requires more than simply a diagnosed impairment.") In support of his contention that he is a qualified individual with a disability, Plaintiff avers that he suffers from "disabilities, depression, anxiety, and diabetes" and that in Spring 2011 he suffered "an emotional breakdown including major depressive disorder." (Doc. No. 1 ¶¶ 29, 32.) However, merely referring to a leave of absence due to anxiety and depression has not been viewed as sufficient to show impairment

9

under the ADA. See Amiot v. Kemper Ins. Co., 122 F. App'x 577, 580 (3d Cir. 2004) (affirming district court's grant of a motion to dismiss). Moreover, Plaintiff fails to actually plead how or which of his major life activities were affected. Instead, he states that "[d]epositions and discovery will reveal exactly what those major life activities are." (Doc. No. 17 at 22). In conjunction with the bare facts supporting his disability claim, the Court finds these allegations insufficient to plausibly set forth that Plaintiff was disabled. See Creasy v. Novelty, Inc., No. 04-2296, 2005 WL 1652441, at *2 (M.D. Pa. July 6, 2005) (granting motion to dismiss ADA claim where, in part, "Plaintiff has not stated in his amended complaint what major life activity is substantially limited by his physical impairment").

Plaintiff also fails to sufficiently plead in the alternative that Defendants regarded him as being disabled. See 42 U.S.C. Section 12102(3). To show that an employer regarded the plaintiff as disabled under the ADA, a Plaintiff must (1) despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits major life activities; or (2) the plaintiff has a nonlimiting impairment that the employer mistakenly believes limits major life activities. Tice v. Centre Area Transp. Auth., 247 F.3d. 506, 514 (3d Cir. 2001). "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996). Instead, the plaintiff must show that the employer believed that a major life activity was substantially limited by the plaintiff's impairment. See Sever v. Henderson, 381 F.Supp.2d 405, 416 (M.D. Pa. 2005)

Regarding Defendants' knowledge of his impairment, Plaintiff only alleges that

Defendants granted him leave under the FMLA. (Doc. No. 1 ¶ 33.) Plaintiff relies on the conclusory assertion that Defendants "regarded Plaintiff as an individual with disability." (Id. ¶¶ 91-92.) However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist. 132 F.3d 902, 906 (3d Cir. 1997). Accordingly, the Court finds that Plaintiff has failed to allege facts that establish either that he was a qualified disabled individual under Section 12102(2) or that he was regarded as being disabled by his employer within the meaning of the Section 12102(3) of the ADA. For the above reasons, the Court will dismiss Plaintiff's discrimination claims arising under the ADA without prejudice.

### E.      Age Discrimination in Employment Act (ADEA)

Defendants move to dismiss Plaintiff's claims under the Age Discrimination in Employment Act (ADEA). Plaintiff alleges that Defendants discriminated against him due to his age in violation of the ADEA by excluding him from meetings that he should have been allowed to attend, and that Defendants disciplined him for alleged sexual harassment when similarly situated younger employees were not disciplined for similar conduct. (Doc. No. 1 ¶¶ 103-110.)

In order to establish a prima facie case for age discrimination, a plaintiff must show that "(1) he is over forty, (2) is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that his replacement was sufficiently younger to permit a reasonable inference of age discrimination." Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004) (citing Duffy v. Paper Magic Grp., Inc., 265 F.3d 163, 167 (3d Cir. 2001)). Plaintiff does not allege that he was replaced by anyone. (See Doc. No. 1.)

Alternatively, however, a plaintiff could allege a violation of the ADEA if he was treated

less favorably than "similarly-situated, younger employees." Monaco v. Am. Gen. Assurance Co., 359 F. 3d 296, 300 (3d Cir. 2004). On this theory, the Court finds that Plaintiff has adequately stated a claim. Plaintiff alleges that others outside of his protected class (i.e. under 40) engaged in behavior similar to his but were not disciplined, and alleges specific facts in support of this contention. For example, Plaintiff alleges that a fellow employee, Anthony Risteff, is in his twenties and engaged in sexually suggestive "horseplay" around the office, but was not reprimanded as Plaintiff was for sexual harassment. (Doc. No. 1 ¶¶ 37-40, 43, 62.) Defendants ask the Court to conclude they are not "similarly situated," but Plaintiff avers that both were employed by Defendant, both violated the sexual harassment policy, yet only Plaintiff was reprimanded. The Court finds that this is sufficient to state a claim at this stage. See Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004) (noting that determining whether individuals are similarly situated "requires a court to undertake a fact-intensive inquiry on a case-by-case basis"); Chan v. Cnty. of Lancaster, No. 10-03424, 2011 WL 4478283, at *15 (E.D. Pa. Sept. 26, 2011) ("Determining whether an individual is "similarly situated" to another individual is a case-by-case fact-intensive inquiry . . . [t]his court has previously suggested that a final determination of this issue is inappropriate at the motion to dismiss stage."). For these reasons, the Court will not dismiss Plaintiff's claim arising under the ADEA.

### F. Family and Medical Leave Act

#### 1. Interference

Defendants move to dismiss Plaintiff's FMLA interference claim. Plaintiff alleges he was improperly denied his December 2011 request for leave. (Doc. No. 1 ¶¶ 71-78.) The FMLA requires that "an eligible employee shall be entitled to a total of twelve workweeks of leave

during any twelve month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a) (1)(D). There are, broadly, two types of serious health conditions qualifying for FMLA leave. See generally Criscitello v. MHM Servs., Inc., No. 10-0200, 2013 WL 4049724 (M.D. Pa. Aug. 9, 2013). The first involves inpatient care in a hospital, or any subsequent treatment in connection with such inpatient care. 29 C.F.R. § 825.114(a)(1). The second requires "continuing treatment by a health care provider" in conjunction with certain specified limitations and conditions. See 29 C.F.R. § 825.115.

To prove an FMLA interference claim, a plaintiff "needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006). Specifically, a plaintiff must show that: (1) he was an eligible employee under the FMLA, (2) the defendant was an employer subject to the FMLA's requirements, (3) the plaintiff was entitled to FMLA leave, (4) the plaintiff gave notice to the employer of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA. Mascioli v. Arby's Rest. Group, Inc., 610 F.Supp.2d 419, 429-30 (W.D. Pa. 2009).

The Court finds that Plaintiff fails to allege that he had a serious health condition at the time he was denied FMLA leave in December 2011, and was thus entitled to such leave and improperly denied it. See Sommer, 461 F.3d at 399 ("An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.") Plaintiff only avers that "due to his anxiety, Plaintiff filed an FMLA request for leave on December 9, 2011." (Doc. No. 1 ¶ 71.) He does not allege

13

any additional specific facts establishing that he was unable to perform the functions of the position or that he was seeing a physician for continuing treatment at the time of his request in late 2011[2]. Further, Plaintiff concedes that he did not provide medical documentation in support of his FMLA request.[3] See Criscitello, 2013 WL 4049724, at *6 ("Plaintiff has pointed to no case law, and the Court is unaware of any, that has found a serious medical condition to exist upon the bare assertion of employee's intent to seek medical treatment."). Accordingly, Plaintiff has not pled that he suffered from a serious medical condition entitling him to FMLA leave in December 2011, and the Court will dismiss his interference claim without prejudice.

### 2. Retaliation

Defendant also moves to dismiss Plaintiff's FMLA retaliation claim. To establish a prima facie case for retaliation under the FMLA, a plaintiff must show that (1) he or she is protected under the FMLA, (2) he or she suffered an adverse employment decision, and (3) the adverse decision was causally related to plaintiff's exercise of his or her FMLA rights. Mascioli, 610 F. Supp. 2d at 434.

---

[2] Although he sought "hospitalization, treatment, counseling, therapy, and aftercare" in "Spring of 2011" (Doc. No. 1 ¶ 32), Plaintiff makes no averments suggesting he was seeing a physician for any continuing treatment at the time of his second FMLA request in December, 2011.

[3] Plaintiff argues that he had "every intention of going to his healthcare provider to provide the necessary documentation" but did not do so when he was told, on December 15, the day of his termination, that nothing would be done with his request. Regardless, an FMLA cause of action requires a showing that a Defendant is entitled to FMLA leave, and intent to seek medical treatment is insufficient to establish such an entitlement or to sustain a cause of action. Criscitello, 2013 WL 4049724, at *6 ("It is not enough that Plaintiff merely intended to seek treatment, or that she diagnosed herself as suffering from a serious health condition.")

For purposes of a retaliation claim, proof of causation may depend on three types of evidence: temporal proximity, a pattern of antagonism by the employer in response to the protected activity, and the employer's knowledge of that activity. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997). While evidence of only one factor is generally insufficient to establish causation, evidence of all three is not necessary, so long as the claim reasonably supports an inference of causation. Id.

The Court agrees with Defendants that, to the extent Plaintiff's retaliation claim is premised on his requesting leave on December 9, 2011, he does not state a claim for relief. Because the Court finds Plaintiff has not alleged he suffered from a serious health condition entitling him to FMLA leave in December 2011, he has not alleged his December 2011 request was protected activity under the FMLA and cannot state a claim for retaliation based on his December request. See Hansler v. Lehigh Valley Health Network, No. 13-03924, 2014 WL 1281132, at *12 (E.D. Pa. Mar. 28, 2014) ("[A]n FMLA leave request [must] be valid in order for that request to form the basis for a retaliation claim"); Criscitello 2013 WL 4049724, at *7 (citing Naber v. Dover Healthcare Assocs., Inc., 473 F. Appx. 157, 159–60 (3rd Cir. 2012) (finding that because Plaintiff did not suffer from a serious health condition, it "compels the logical conclusion that she cannot make out a prima facie case for retaliation"). Moreover, although Plaintiff alleges retaliation in that he was fired six days following his December 9, 2011 request for FMLA leave, he also avers that "before he had responded [on December 9] . . . [Defendants] had already made up their mind to terminate him." (Doc. No. 1 ¶ 69.) Accordingly, no fair reading of Plaintiff's complaint alleges causation between the December 2011 leave request and the adverse employment decision, as Plaintiff expressly alleges the

decision to terminate him was made <u>prior</u> to his request for leave on December 9, 2011.

However, Plaintiff also premises his FMLA retaliation claim based on the leave which was granted in March 2011. Accordingly, the question for the Court is whether or not Plaintiff has alleged facts indicating that he was retaliated against for taking FMLA leave in early 2011.

Regarding Plaintiff's March 2011 leave, the Court finds, first, that there is no temporal proximity between it and the subsequent adverse employment decision at the end of the year. <u>See</u> <u>Walsh v. Wal Mart Stores, Inc.</u>, 200 F. App'x 134, 136 (3d Cir. 2006) (finding no temporal proximity for retaliation claim because a period of eight months is not "unusually suggestive of retaliatory motive."). However, the Court finds that Plaintiff has alleged a "pattern of antagonism" tending to show causation. Plaintiff alleges that upon his return he was excluded from important meetings by Defendant Wantland, not notified of significant HR matters and eventually fired in December 2011 under discriminatory circumstances. (Doc. No. 1 ¶¶ 50, 61-63, 69, 75.) Although the Court found these allegations wholly insufficient to give rise to an actionable hostile work environment claim, the same allegations may be sufficient to establish a consistent pattern of antagonism between Plaintiffs' FMLA leave and the eventual adverse employment decision. <u>See</u> <u>Staffieri v. Nw. Human Servs., Inc.</u>, No. 12-1612, 2013 WL 2245639, at *8 (E.D. Pa. May 22, 2013) (finding pattern of antagonism where Plaintiff was treated "very badly," was excluded from meetings, and his job responsibilities handed to another employee.). Thus, to the extent Plaintiff bases his FMLA retaliation claim on his March 2011 leave, the Court will not dismiss the claim.

### 3. Individual Defendants

The Third Circuit has held that "an individual is subject to FMLA liability when he or

she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." Haybarger v. Lawrence Cnty. Adult Probation & Parole, 667 F.3d 408, 417 (3d Cir. 2012).  In analyzing an individual supervisor's control over the employee under the FLSA and the FMLA, the Third Circuit then remarked that "most courts look to the 'economic reality' of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee." Id.  The Third Circuit found several factors to be relevant in ascertaining the economic reality of the employment situation, including whether the individual "(1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 418.

The Court finds that Plaintiff has adequately alleged FMLA claims against Defendants Wantland and Kreiser.  Plaintiff alleges that both Defendants had the power to hire and fire him. (Doc. No. 1 ¶¶ 12-14.)  He alleges both Defendants retaliated against him in response to his FMLA leave in March 2011.  (Id. ¶ 122.)  He alleges Defendant Wantland specifically excluded him from meetings and important information.  (Id. ¶ 50.)   He alleges Defendant Kreiser was biased against him and had secret meetings with other employees.  (Id. ¶¶ 47, 51.)  He alleges that both Defendants wrongly questioned and reprimanded him for behavior while ignoring other similarly situated individuals, eventually forcing his involuntary resignation.  (Id. ¶¶ 37-40, 43, 62.)  Accepting these facts as true, the Court can plausibly infer that Defendants Wantland and Kreiser acted as his employers and retaliated against him for exercising his rights under the FMLA in March 2011.  Accordingly, the Court will not dismiss the FMLA claim against

Defendants Wantland and Kreiser individually.

### G. Title VII and breach of contract

Defendants also move to dismiss Plaintiff's claims arising under Title VII and for breach of contract for failure to state a claim for which relief can be granted. Plaintiff does not respond to this aspect of Defendants' motion, other than to write that "Plaintiff seeks leave to amend his Title VII claim [and] his breach of contract claim." (Doc. No. 17 at 28.) Accordingly, because the Court deems this aspect of the motion unopposed, and because the Court agrees that Plaintiff has not stated a claim under either theory, the Court will dismiss these claims without prejudice to the filing of an amended complaint.

### IV. CONCLUSION

The Court will dismiss Plaintiff's PHRA claims with prejudice as time-barred. Further, the Court will dismiss Plaintiff's ADA, Title VII, hostile working environment and breach of contract claims without prejudice. To the extent Plaintiff alleges FMLA interference, the Court will dismiss the claim without prejudice. To the extent Plaintiff alleges Defendants violated his rights under the FMLA by retaliating against him for taking leave, the Court will deny Defendants' motion to dismiss the claim. The Court will also deny Defendants' motion to dismiss Plaintiff's age discrimination claim under the ADEA. An order consistent with this memorandum follows.