## IN THE UNITED STATE DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID J. POPKO,** | : | **No. 1:13-cv-01845** |
| **Plaintiff,** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **PENN STATE MILTON S.** | : | |
| **HERSHEY MEDICAL CENTER, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint.  (Doc. No. 29.)  For the reasons that follow, the Court will grant Defendants' motion.

## I.      BACKGROUND

On July 5, 2013, Plaintiff David J. Popko initiated the above-captioned action by filing a complaint against Defendants Penn State Milton S. Hershey Medical Center, Greg Wantland, and Mary Ann Kreiser.  (Doc. No. 1.)  In his initial complaint, Plaintiff brought claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C.A. § 621, et seq. ("ADEA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), arising out of his December 15, 2011, termination, and an allegedly hostile working environment.[1]  (Id.)  He also alleged that Defendants violated the Family and Medical Leave Act, 29 U.S.C.A. § 2601, et seq. ("FMLA") by interfering with his right to take leave and by retaliating against him for seeking to take leave.  (Id.)  He further

_____

[1] Many of the factual allegations in Plaintiff's amended complaint are identical to those raised in his initial complaint, and the Court described them in detail in its memorandum addressing Defendants' first motion to dismiss.  (See Doc. No. 22.)  For the sake of brevity, the Court will not reiterate them here.

alleged that Defendants breached the contract contained within the Penn State Milton S. Hershey Medical Center human resources manual by failing to inform him of his appeal rights at the time of his termination.  (Id.)  On December 9, 2013, Defendants filed a motion to dismiss the initial complaint.  (Doc. No. 13.)

In its memorandum and order addressing that motion to dismiss, the Court dismissed all of Plaintiff's claims for failure to state a claim upon which relief could be granted, save his claim for age discrimination under the ADEA and retaliation under the FMLA, both of which the Court allowed to proceed.  (Doc. Nos. 22, 23.)  The Court also granted Plaintiff leave to amend his complaint, except as to the PHRA claims, which it dismissed with prejudice.  (Id.)  On August 15, 2014, Plaintiff filed an amended complaint, re-pleading most of the claims the Court previously dismissed without prejudice, and adding a gender discrimination claim under Title VII.  (Doc. No. 27.)

Defendants responded by filing a motion to dismiss the amended complaint on August 28, 2014.[2]  (Doc. No. 29.)  Plaintiff's brief in opposition was initially due within fourteen days; Plaintiff's counsel filed a motion for an extension of time to respond (Doc. No. 31), which the Court granted, giving Plaintiff's counsel until September 22, 2014 to file a brief in opposition. (Doc. No. 32.)  The Court will not rehash the lengthy history of delays and extensions sought by and provided to Plaintiff's counsel – a history that includes Plaintiff's counsel ignoring Court-ordered deadlines (see, e.g., Doc. Nos. 40, 41) – but as a result of the continued delays, on March

---

[2] Defendants ask to the Court to dismiss the amended complaint with prejudice, except for the FMLA retaliation and ADEA discrimination claim, both of which the Court already found stated a claim sufficient to survive Defendants' Rule 12(b)(6) motion.

9, 2015, Defendants filed a motion to dismiss the case for failure to prosecute.[3] (Doc. No. 42.) The Court held a status conference with the parties on April 30, 2015, and gave Plaintiff's counsel a ten-day window to file briefs in opposition to the motions to dismiss. (Doc. Nos. 44, 45.) Plaintiff's counsel filed a briefs in opposition on May 11 and 12, 2015. (Doc. No. 49.) Defendants filed a reply brief on May 26, 2015. (Doc. No. 51.) The motion is fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618

---

[3] Because the Court finally received briefs from Plaintiff – and the litigation is hopefully moving forward – the Court will deny the Defendants' pending motion to dismiss for failure to prosecute. The Court will also schedule a telephone conference for an update on what, if any, counsel Plaintiff intends to engage as the case moves forward. The Court emphasizes that should the litigation again reach a standstill through any fault of Plaintiff or his chosen counsel, Defendants may renew their motion to dismiss for failure to prosecute.

F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly

and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following

steps a district court must take when determining the sufficiency of a complaint under Rule

12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and

(3) determine whether any "well-pleaded factual allegations" contained in the complaint

"plausibly give rise to an entitlement for relief."  See Santiago v. Warminster Twp., 629 F.3d

121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.    DISCUSSION

### A.    Continuing violations doctrine and hostile work environment

In its first order, the Court found that Plaintiff's hostile work environment claims under

the ADA and ADEA were time barred because the only act alleged to have occurred within 300

days of the filing of Plaintiff's charge with the Equal Employment Opportunity Commission

("EEOC") was his termination on date December 15, 2011; he filed his charge with the EEOC

exactly 300 days later, on October 10, 2012.  (See Doc. No. 22 at 4-6.)  Although Plaintiff

4

argued that the continuing violations doctrine[4] should apply to preserve his claims, the Court rejected that argument because an employee's termination is a discrete act that does not trigger the continuing violations doctrine.  (See id.)  Thus, the Court ordered Plaintiff to "amend his complaint to adequately allege facts in support of his hostile work environment claim that occurred within the permissible time period."  (Id. at 6.)

However, Plaintiff failed to plead any such facts in his amended complaint, and again argues that the continuing violations doctrine should apply because his termination is related to the alleged prior hostile acts.  (Doc. No. 49 at 19-21.)  The Court already rejected this argument and will do so again.[5]  Regarding the 300-day limit, "[p]rovided that an act contributing to the [hostile working environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  However, as the Court already indicated, the United States Supreme Court has expressly declared that acts such as termination

---

[4]  Pursuant to the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  Brenner v. Local 514 United Bhd. of Carpenters and Joiners of Am., 927 F. 2d 1283, 1295 (3d Cir. 1991).

[5]  However, the Court observes that its conclusion on this point was not as broad as Defendants appear to suggest.  Defendants write that "Plaintiff's termination is the only act that can be cited in support of Plaintiff's ADA, ADEA, and Title VII claims, per this Court's order." (Doc. No. 30 at 12.)  Although Plaintiff can not, for example, use such untimely averments as the basis of any claims – such as his untimely hostile work environment claims – such acts may be used as evidence in support of a timely claim, i.e., Plaintiff's claim that he was terminated on the basis of his age in violation of the ADEA, to the extent such acts are relevant.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Nor does [Title VII] bar an employee from using prior acts as background evidence in support of a timely claim."); Ryan v. Pace Suburban Bus Div. of Reg'l Transp. Auth., 837 F. Supp. 2d 834, 837-38 (N.D. Ill. 2011).

are discrete acts, "different in kind" from hostile work environment claims, and not within the

scope of the continuing violations doctrine.  Id. at 113-15.  Accordingly, the Court will dismiss

Plaintiff's hostile work environment claims.[6]

     **B.**     **ADA**

     Defendants move to dismiss Plaintiff's claim that he was discriminated against on the

basis of his disability in violation of the ADA.  A plaintiff presents a prima facie case of

discrimination under the ADA by demonstrating: (1) he or she is a disabled person within the

meaning of the ADA; (2) he or she is otherwise qualified to perform the essential functions of

the job, with or without reasonable accommodations by the employer; and (3) he or she has

suffered an otherwise adverse employment decision as a result of discrimination.  Gaul v. Lucent

Techs. Inc., 134 F.3d 576, 580 (3d Cir. 1998).  An individual is "disabled" when he or she has

(1) a physical or mental impairment that substantially limits one or more major life activities; (2)

a record of such impairment; or (3) is regarded as having such an impairment.  42 U.S.C. §

12102(1)(A–C).  To determine whether an impairment substantially limits a major life activity,

the ADA's implementing regulations set forth factors including: the nature and severity of the

impairment, the duration or expected duration of the impairment, and the permanent or long term

impact, or the expected permanent or long term impact of or resulting from the impairment.

Trelenberg v. 21st Century Ins. & Fin. Servs., Inc., No. 12-3603, 2013 WL 3914468, at *8 (E.D.

Pa. July 30, 2013) (quoting 29 C.F.R. § 1630.2(i)).

---

     [6] The Court alternatively found in its last order that even if Plaintiff's hostile work
environment claims were not time-barred, Plaintiff had also failed to allege facts in support of
his claims.  The Court still finds this to be true, as the factual averments in Plaintiff's amended
complaint are not sufficiently severe so as to "alter the conditions of [his] employment and create
an abusive working environment."  Morgan, 536 U.S. at 116.

In its memorandum concerning the Defendants' first motion to dismiss, the Court found that Plaintiff had failed to sufficiently allege that he was an individual with a disability, or alternatively that he was regarded as having as disability.  (Doc. No. 22 at 8-11.)  After review of the amended complaint, the Court finds that Plaintiff has failed to remedy these defects in his latest pleading.

Regarding his contention that he is disabled, Plaintiff alleges that he has "diabetes . . . and the mental impairments of depression, anxiety disorder, and obsessive-compulsive personality disorder" (Doc. No. 27 ¶ 4), allegations not dissimilar to those in Plaintiff's original complaint.[7]   However, as the Court already noted (Doc. No. 22 at 9-10), generalized allegations of anxiety and depression have been found insufficient to plead a disability under the ADA.  See Amiot v. Kemper Ins. Co., 122 F. App'x 577, 580 (3d Cir. 2004).  Crucially, Plaintiff also fails to adequately allege facts in support of his assertion that he is accordingly substantially limited in performing the major life activities of "eating and sleeping . . . interacting with others, thinking, concentrating, and judgment."  (Doc. No. 27 ¶¶ 5-6.)  Plaintiff's complaint is short of factual allegations describing the effects of his various ailments on his daily life.  See Shultz v. Potter, 142 F. App'x 598, 599 (3d Cir. 2005) (affirming the district court's finding that the Plaintiff was not "disabled" under the ADA as a result of his diabetes).   Simply put, the Court still finds that Plaintiff's limited factual averments are insufficient to allege that he is "substantially limited" in a major life activity.  See Riley v. St. Mary Med. Ctr., No. 13-7205, 2014 WL 1632160, at *7 (E.D. Pa. Apr. 23, 2014) (finding that the Plaintiff failed to allege she

---

[7] In Plaintiff's original complaint, he averred that he was disabled because he suffered from "disabilities, depression, anxiety, and diabetes" and that in Spring 2011 he suffered "an emotional breakdown including major depressive disorder."  (Doc. No. 1.)

was disabled where she "provided no factual basis for concluding that her abilities to sleep, concentrate, communicate, or think are substantially limited . . . [where the plaintiff] provided no facts illuminating to what extent or how her activities are 'limited.' This dearth of detail makes it impossible to infer that Plaintiff is substantially limited, as opposed to only somewhat limited or mildly hampered.").

The Court also finds, as it did in its initial memorandum, that Plaintiff again fails to allege beyond conclusory assertions that he was "regarded" as disabled, which would also trigger the protections of the ADA. "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996). The Court will dismiss Plaintiff's ADA claim.

## C.    Title VII

Defendants move to dismiss Plaintiff's claim that he was discriminated against and ultimately terminated on the basis of his gender in violation of Title VII. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Under Title VII, a plaintiff must allege that: (1) he or she is a member of a protected class; (2) he or she was qualified for the position; (3) he or she suffered from an adverse employment action; and (4) the action was taken under circumstances that give rise to an inference of unlawful discrimination. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999). "A plaintiff must also 'establish some causal nexus between his membership in a protected class and the decision' to fire him." Nouri v. Pennsylvania State Univ., No. 10-934, 2015 WL 4066942, at *11 (M.D. Pa. July 2,

2015) (quoting <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 798 (3d Cir. 2003)). "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class." <u>Klimsczak v. Shoe Show Companies</u>, 420 F. Supp. 2d. 376, 382 (M.D. Pa. 2005).

The Court finds that Plaintiff has failed to allege facts to support his claim that he was fired because he is male. Plaintiff contends that his complaint sets forth that similarly situated female employees were not terminated.[8] (Doc. No. 49 at 21-22.) However, Plaintiff's amended complaint specifically highlights both female <u>and</u> male employees that were not terminated for purportedly similar infractions in violation of the sexual harassment policy. (<u>See, e.g.</u>, Doc. No. 27 ¶¶ 53-62.) Thus, the Court finds Plaintiff's averments ultimately self-defeating as to his Title VII claim, and certainly finds no plausible inference of gender discrimination on the facts alleged in the amended complaint. Accordingly, the Court will dismiss this count.

### D.    FMLA Interference

Defendants also move to dismiss Plaintiff's claim that Defendants interfered with his FMLA rights by improperly denying him leave in December, 2011. The Court thoroughly dicussed the elements of this claim in its July 14, 2014 order on Defendants' first motion to

---

[8] According to Plaintiff – and as discussed in detail in the Court's original memorandum – on November 16, 2011, while assisting other employees in moving sharp edged tables, Plaintiff told colleagues that his "daughter's bra might make a good bumper." (Doc. No. 27 ¶ 71-76.) It was this comment that allegedly led to his termination. (<u>Id.</u> ¶¶ 79-89.) According to Plaintiff, others not of his protected class, <u>i.e.</u>, females, "have made similar types of comments/jokes in the workplace and have not been disciplined for them" and "have engaged in horseplay and sexual playfulness/harassment at the workplace and have not been subject to discipline for their conduct." (<u>Id.</u> ¶¶ 77, 78.)

dismiss.  (See Doc. No. 22 at 12-14.)  The FMLA requires that "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  There are, broadly, two types of serious health conditions qualifying for FMLA leave.  See Criscitello v. MHM Servs., Inc., No. 10-0200, 2013 WL 4049724 (M.D. Pa. Aug. 9, 2013).  The first involves inpatient care in a hospital, or any subsequent treatment in connection with such inpatient care.  29 C.F.R. § 825.114(a)(1).  The second requires "continuing treatment by a health care provider" in conjunction with certain specified limitations and conditions.  See 29 C.F.R. § 825.115.

To prove an FMLA interference claim, a plaintiff "needs to show that he was entitled to benefits under the FMLA and that he was denied them."  Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006).  Specifically, a plaintiff must show that: (1) he was an eligible employee under the FMLA, (2) the defendant was an employer subject to the FMLA's requirements, (3) the plaintiff was entitled to FMLA leave, (4) the plaintiff gave notice to the employer of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA.  Mascioli v. Arby's Rest. Grp., Inc., 610 F. Supp. 2d 419, 429-30 (W.D. Pa. 2009).

In its memorandum and order dismissing this claim as alleged in the initial complaint, the Court found that Plaintiff failed to allege that he had a serious health condition at the time he was denied FMLA leave in December 2011, and therefore failed to show that he was entitled to and improperly denied leave.  (Doc. No. 22 at 13-14.)  The Court finds that the amended complaint fails to remedy this defect.

Plaintiff again alleges that "due to his anxiety" he filed an FMLA leave request on December 9, 2011.  (Doc. No. 27 ¶ 87.)   In previously concluding that Plaintiff had not adequately alleged that he was entitled to leave in December 2011, the Court highlighted, for example, that Plaintiff made no factual averments "suggesting he was seeing a physician for any continuing treatment at the time of his second FMLA request for leave on December 9, 2011" (Doc. No. 22 at 14), and further, that he had conceded that he had not provided medical documentation in support of his leave request (id.).  See Criscitello, 2013 WL 4049724, at *6 ("Plaintiff has pointed to no case law, and the Court is unaware of any, that has found a serious medical condition to exist upon the bare assertion of employee's intent to seek medical treatment.").  In his amended complaint, Plaintiff adds the threadbare averment that he "saw his physician for his conditions," but offers no facts as to when he saw his physician, i.e., whether he was in continuing treatment at or near the time of his FMLA request.  See 29 C.F.R. § 825.115. Simply put, the amended complaint is still lacking in adequate factual averments establishing that Plaintiff was entitled to FMLA leave in December, 2011.  See Sommer, 461 F.3d at 399 ("An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.").  Accordingly, the Court will dismiss this claim.

### E.      Breach of contract

Defendants also move to dismiss any breach of contract claim Plaintiff intends to bring, acknowledging that it is not clear whether Plaintiff intends to bring one.  (See Doc. No. 30 at 26.)  Plaintiff's original complaint brought a breach of contract claim in Count VI, alleging that Defendants breached a contract contained within the Penn State Milton S. Hershey Medical

Center human resources manual by failing to inform him of his appeal rights at the time of his termination.[9]  (See Doc. No. 1.)  Although his amended complaint states under the "Jurisdiction and Venue" section that Plaintiff is bringing a breach of contract claim (Doc. No. 27 at 2), the amended complaint also removes the count related to breach of contract, and even generously construed, the Court does not find any such claim alleged on the face of the amended complaint. Additionally, there are no factual averments from which the Court could find that the employee handbook constituted a legally binding contract.  See Borrell v. Bloomsburg Univ., 955 F. Supp. 2d 390, 409 (M.D. Pa. 2013) ("A written personnel policy may serve as the basis for a cause of action for breach of a provision contained within it if under all of the circumstances, the parties manifest an intent that it become a legally binding contract.").  Notably, Plaintiff does not directly respond to the breach of contract section of Defendants' motion – which Plaintiff also failed to do in response to the first motion to dismiss – and the Court deems this aspect of the motion unopposed.  (See Doc. Nos. 14, 17, 30, 49.)  Accordingly, the Court will dismiss the breach of contract claim, to the extent that Plaintiff sought to bring one.

## F.     Leave to Amend

Lastly, Plaintiff asks for leave to amend his complaint "to correct any deficient pleadings" and "to make it more clear that [the breach of contract claim] is only against Defendant Penn State Hershey Medical Center."  (Doc. No. 49 at 23.)  "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."  Grayson v. Mayview

---

[9]    To state a claim for common law breach of contract, a plaintiff must plead: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages.  Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super. Ct. 2006).

State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  A Court need not grant leave to amend where amendment would be inequitable or futile.  Id.  Here, the Court already gave Plaintiff an opportunity to amend his complaint, but he failed to correct the deficiencies highlighted by the Court.  He also, for the second time, failed to respond to Defendants' argument that Plaintiff failed to plead facts in support of a breach of contract claim.  The Court also cannot ignore that this case has already experienced serious delays as a result of the prior grant of leave to amend, and the Court finds that further leave to do so would prejudice Defendants.  For these reasons, the Court will not grant further leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the motion.  Thus, the sole remaining counts in this case are those the Court did not dismiss in its memorandum and order of June 14, 2014 (1) Plaintiff's FMLA retaliation claim, against all Defendants, and (2) Plaintiff's claim that was he was terminated in violation of the ADEA, against Defendant Penn State Hershey Medical Center.[10]  (See Doc. Nos. 22, 23.)  Because the Court will not grant further leave to amend, the remaining claims will be dismissed with prejudice.  An order consistent with this memorandum follows.

---

[10]  Although it was not made clear in its initial order, as Defendants point out (Doc. No. 30 at 25) – and to which Plaintiff concurs (Doc. No. 49 at 23) – there is no liability for individuals under the ADEA.